1  **LAW OFFICE OF STEWART KATZ**
   STEWART KATZ, State Bar #127425
2  GUY DANILOWITZ, State Bar #
   NOTICE OF NONCOMPLIANCE
3  555 University Avenue, Suite 290   See L.R. 133(a) & (d)(3)
   Sacramento, California 95825   FILED IN PAPER
4  Telephone: (916) 444-5678   United States District Court
        Eastern District of California
5

6  Attorney for Plaintiffs
   ANDRES GUTIERREZ, ANDREW LATSHAW,
7  DEMONTE KELLY, JOVON KELLY, AUSTIN WESTALL,
   and WENDY SEGARRA
8

**FILED**

SEP 13 2012

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
        DEPUTY CLERK

9              **UNITED STATES DISTRICT COURT**

10             **EASTERN DISTRICT OF CALIFORNIA**

11                                      **2:12 - CV - 2 3 5 8 JAM CKD**
                                         No:
12  ANDRES GUTIERREZ, ANDREW LATSHAW,
13  DEMONTE KELLY, JOVON KELLY, AUSTIN
    WESTALL, and WENDY SEGARRA,
14

15          Plaintiffs,                 **COMPLAINT FOR
                                         VIOLATION OF CIVIL
16          vs.                          RIGHTS [42 U.S.C. § 1983]**

17  Former Twin Rivers  Police Department Chief
    CHRISTOPHER BRECK; Twin Rivers  Police
18  Department Sergeant CHUE LOR (Badge #303);
    Former Twin Rivers Police Department Officer
19  BRANCHE SMITH; Twin Rivers Police Department   **JURY TRIAL DEMANDED**
    Officer TARAS CHERNYY (Badge #21); Twin
20  Rivers Police Department Officer ANTHONY RUIZ
    (Badge #9);  Twin Rivers Police Department Officer
21  EMILY KELLY (Badge #5); Former Twin Rivers
    Unified School District Superintendent, FRANK
22  PORTER; Twin Rivers Unified School District Deputy
    Superintendent, ZIGGY ROBESON, and DOES 1
23  through 50, inclusive,
24

25          Defendants.

26  _____/

27

28


Complaint for Violation of Civil Rights; Jury Trial Demanded                    1

1    Plaintiffs Andres Guitierrez, Andrew Latshaw, Demonte Kelly, Jovon Kelly, Austin

2  Westall, and Wendy Segarra complain and allege as follows:

3                                    **INTRODUCTION**

4    1.    On September 17, 2010, four of the six plaintiffs were sitting in a lawfully

5  parked car in front of the house where several of them lived. Without legal cause a Twin

6  Rivers Police Department Officer Taras Chernyy pulled his vehicle behind them to detain

7  them. Several of the plaintiffs questioned the basis for Chernyy's actions, which led to him

8  first drawing his baton and then his firearm. Other officers were summoned and the plaintiffs

9  were all arrested at gunpoint and officers attempted to justify that arrest by booking them on a

10  slew of felony charges.

11    2.    Rather than taking the arrested plaintiffs directly to jail, they were instead

12  diverted to the Twin Rivers Police Department offices. Plaintiffs, who were all handcuffed,

13  were placed in what they call a "pre-booking room." Four were seated on benches to which

14  their handcuffs were anchored, the fifth was standing. Defendant Twin Rivers Police Officer

15  Branche Smith, insulted by the plaintiffs' insinuations that the officers weren't "real cops,"

16  told plaintiffs: "this ain't no fuckin' Chuck-e-Cheese" and then proceeded to play his own

17  sadistic version of the children's game "Duck-Duck-Goose" and choked three of the five. He

18  also pointed a taser at the victim's chest and threatened to "light him up." These actions took

19  place within the view of nearly half of the Twin Rivers Police Department's officers. None of

20  the officers took any steps to intervene or protect the plaintiffs. None of the officers reported

21  Smith's criminal assaults.

22    3.    An officer, apparently for his own amusement, made an audio recording of the

23  events with a cell phone in the holding cell. It is believed that this incident was commonly

24  referred to as the "Chuck-e-Cheese thing" or the "Chuck-e-Cheese incident."

25    4.    The car in which four of the plaintiffs had been sitting prior to their encounter

26  with Chernyy was towed pursuant to the Twin Rivers Police Department's policies and

27  practices, implemented by Superintendent Porter, Deputy Superintendent Robeson and Police

28  Chief Breck, of towing as many vehicles as possible so as to maximize the Department's

Complaint for Violation of Civil Rights; Jury Trial Demanded                              2

1 | revenue.

2 |     5.      No criminal charges were filed against any of the plaintiffs in connection with
3 | these events, despite four of them being held on six figure bails.

4 |     6.      Officer Smith was charged in 2012 with three criminal counts by the
5 | Sacramento County District Attorney's Office.

6 |     7.      Through this action plaintiffs seek compensation for wrongful detention and
7 | arrest, excessive force, declaratory relief regarding records pertaining to the arrest, physical
8 | injuries, economic damages and violation of their constitutional rights and damages relating to
9 | the deprivation of their property. Plaintiffs also seek punitive damages against the defendants.

10 | **PARTIES**

11 |     8.      Plaintiff Andrew Latshaw (hereinafter "Andrew") was, at all relevant times,
12 | twenty-one years old, approximately 6'2" tall and weighed approximately 280 lbs. Andrew
13 | was a high school graduate who was working full-time providing in-home care for the elderly
14 | and had hopes of going to college and playing football there. Andrew is the half brother of
15 | Plaintiffs Jovon Kelly and Demonte Kelly and cousin of Plaintiff Andres Gutierrez. He lived
16 | at 6348 Longdale Drive in North Highlands, CA 95660 (hereinafter "the Longdale Drive
17 | home") with Jovon and Demonte Kelly and other family members. During all times
18 | mentioned in this Complaint, Plaintiff Andrew Latshaw was, and is, a United States citizen

19 |     9.      Plaintiff Demonte Kelly (hereinafter "Demonte") was, at all relevant times, an
20 | eighteen-year-old high school graduate, approximately 5'11" tall and weighed approximately
21 | 150 lbs. Demonte was a high school graduate attending a vocational school at the relevant
22 | time. Demonte is the brother of Plaintiff Jovon Kelly, the half brother of Andrew and cousin
23 | of Plaintiff Andres Gutierrez. He lived at the Longdale Drive home with Jovon Kelly and
24 | Andrew. During all times mentioned in this Complaint, Plaintiff Demonte Kelly was, and is, a
25 | United States citizen.

26 |     10.     Plaintiff Jovon Kelly (hereinafter "Jovon") was, at all relevant times, a
27 | nineteen-year-old high school graduate attending American River College. He stood
28 | approximately 5'11" tall and weighed 190 pounds. Jovon is the brother of Demonte, the half

1  brother of Andrew and cousin of Plaintiff Andres Gutierrez.  He lived at the Longdale Drive
2  home with Demonte and Andrew.  During all times mentioned in this Complaint, Plaintiff
3  Jovon Kelly was, and is, a United States citizen.

4      11.    Plaintiff Austin Westall (hereinafter "Austin") was, at all relevant times, twenty
5  years old, approximately 5'9" tall, and weighed approximately 150 lbs, and was attending
6  technical school for commercial vehicle repair.  During all times mentioned in this Complaint,
7  Plaintiff Austin Westall was, and is, a United States citizen.

8      12.    Plaintiff Andres Guitierrez (hereinafter "Andres") was, at all relevant times, an
9  eighteen-year-old, Sacramento County resident.  He was approximately 6' tall and 160 lbs.  At
10  the time of this incident he was a high school graduate and was enrolled but had not yet started
11  taking college classes.  Andres is a cousin of Andrew, Demonte and Jovon.  During all times
12  mentioned in this Complaint, Plaintiff Andres Gutierrez was, and is, a United States citizen.

13      13.    Plaintiff Wendy Segarra was the owner of the Ford Focus.  During all times
14  mentioned in this Complaint, plaintiff Wendy Segarra was, and is, a United States citizen.

15      14.    Defendant Christopher Breck was at all times mentioned herein the Chief of the
16  Twin Rivers Police Department acting under color of law.  Breck is being sued in his
17  individual capacity only.

18      15.    Defendant Frank Porter was at all times mentioned herein the Superintendent of
19  the Twin Rivers Unified School District.  Porter is being sued in his individual capacity only.

20      16.    Defendant Ziggy Robeson was at all times mentioned herein the Deputy
21  Superintendent of the Twin Rivers Unified School District.  Robeson is being sued in his
22  individual capacity only.

23      17.    Defendant former Officer Branche Smith was at all times mentioned herein a
24  Twin Rivers Police Department Officer acting under color of law.  Smith is being sued in his
25  individual capacity only.

26      18.    Defendant Taras Chernyy (Badge #21) was at all times mentioned herein a
27  Twin Rivers Police Department Officer acting under color of law.  Chernyy is being sued in
28  his individual capacity only.

Complaint for Violation of Civil Rights; Jury Trial Demanded       4

1    19.    Defendant Officer Anthony Ruiz (Badge #9) was at all times mentioned herein
2  a Twin Rivers Police Department Officer acting under color of law. Ruiz is being sued in his
3  individual capacity only

4    20.    Defendant Officer Emily Kelly (Badge #5) was at all times mentioned herein a
5  Twin Rivers Police Department Officer acting under color of law. Kelly is being sued in her
6  individual capacity only.

7    21.    Defendant Sergeant Chue Lor (Badge #303) was at all times mentioned herein a
8  Twin Rivers Police Department Officer acting under color of law. Lor is being sued in his
9  individual capacity only.

10    22.    The true names and identities of Defendants Does 1 through 10 are presently
11  unknown to plaintiffs. Plaintiffs allege on information and belief that each of Defendants
12  Does 1 through 10 were employed by the Twin Rivers Unified School District and the Twin
13  Rivers Police Department. Plaintiffs allege that Defendants Does 1 through 10, and each of
14  them, on the date of this incident and in the vicinity of the Longdale Drive home, personally
15  participated in the plaintiffs' unlawful detention, wrongful arrest, illegal search and the use of
16  unreasonable use of force upon them. Does 1-10 deprived plaintiffs of property rights without
17  due process. Plaintiffs will seek to amend this Complaint as soon as the true names and
18  identities of Does 1 through 10 have been ascertained.

19    23.    The true names and identities of Defendants Does 11 through 20 are presently
20  unknown to plaintiffs. Plaintiffs allege on information and belief that each of Defendants
21  Does 11 through 20 were employed by the County of Sacramento and/or the County of
22  Sacramento Sheriff's Department at the time of this incident. Plaintiffs allege that Defendants
23  Does 11 through 20, and each of them, on the date of this incident and in the vicinity of the
24  Longdale Drive home, personally participated in the plaintiffs' unlawful detention, wrongful
25  arrest, illegal search and the use of unreasonable use of force upon them. Plaintiffs will seek
26  to amend this Complaint as soon as the true names and identities of Does 11 through 20 have
27  been ascertained.

28    24.    The true names and identities of Defendants Does 21 through 30 are presently

Complaint for Violation of Civil Rights; Jury Trial Demanded                                    5

1   unknown to plaintiffs.  Plaintiffs allege on information and belief that each of Defendants
2   Does 21 through 30 were employed by the City of Sacramento and/or the Sacramento Police
3   Department at the time of this incident.  Plaintiffs allege that Defendants Does 21 through 30,
4   and each of them, on the date of this incident and in the vicinity of the Longdale Drive home,
5   personally participated in the plaintiffs' unlawful detention, wrongful arrest, illegal search and
6   the use of unreasonable use of force upon them.  Plaintiffs will seek to amend this Complaint
7   as soon as the true names and identities of Does 21 through 30 have been ascertained.

8       25.      The true names and identities of Defendants Does 31 through 40 are presently
9   unknown to plaintiffs.  Plaintiffs allege on information and belief that each of Defendants
10  Does 31 through 40 were employed by the Twin Rivers Unified School District and the Twin
11  Rivers Police Department.  Plaintiffs allege that Defendants Does 31 through 40 and each of
12  them were in the immediate presence of Defendant Branche Smith during his assaults on
13  plaintiffs Andrew Latshaw, Demonte Kelly and Austin Westall.   Those Doe defendants
14  created a special relationship with said plaintiffs and failed to protect those plaintiffs from
15  Smith's attack, failed to intervene, ratified Smith's conduct and/or participated in covering up
16  Smith's criminal conduct.  Plaintiffs will seek to amend this Complaint as soon as the true
17  names and identities of Does 31 through 40 have been ascertained.

18      26.      Does 41 through 45 were employed by the Twin Rivers Unified School District
19  and the Twin Rivers Police Department.  Plaintiffs allege that Defendants Does 41 through 45
20  and each of them were responsible for the training, supervision and discipline of officers
21  Smith, Chernyy, Ruiz, Kelly, Lor, Does 1 through 10 and Does 31 through 40.  Plaintiffs will
22  seek to amend this Complaint as soon as the true names and identities of Does 41 through 45
23  have been ascertained.

24      27.      Does 46 through 50 were employed by the Twin Rivers Unified School District
25  and the Twin Rivers Police Department.  Plaintiffs allege that each of Defendants Does 46
26  through 50 and each of them were responsible for implementing the policies and practices at
27  issue in this case which were a cause of the acts and injuries alleged herein.  Plaintiffs will
28  seek to amend this Complaint as soon as the true names and identities of Does 46 through 50

1 | have been ascertained.

2 | **FACTUAL ALLEGATIONS**

3 | 28.     The Twin Rivers Unified School District began its existence in 2008 with the
4 | merger of the North Sacramento Del Paso Heights Grant Union High School District with the
5 | Rio Linda School District.  Twin Rivers Unified School District became one of twenty school
6 | districts within the state of California who operate a police department pursuant to Education
7 | Code Section 38000.

8 | 29.     At the relevant times it is believed the Twin Rivers Police Department had a
9 | chief, a lieutenant, three sergeants and sixteen police officers, as well as an administrative
10 | analyst, four communications officers and approximately seven reserve officers.

11 | 30.     In addition to acting as police services for the Twin Rivers Unified School
12 | District schools, the Twin Rivers Police Department also sold their department services to
13 | several other school districts and park districts.

14 | 31.     Although the stated mission of the department is to "inspire each student to
15 | extraordinary achievement every day by ensuring a safe and secure campus for all of our
16 | students, staff and community," in fact, the department, under the direction of Defendants
17 | Porter, Robeson, Breck and Does 46 through 50, acted as an independent police department
18 | vested with general police powers.

19 | 32.     During the relevant time Defendants Porter, Robeson, Breck and Does 46
20 | through 50 rebranded the Twin Rivers Unified School District Police Department as the Twin
21 | Rivers Police Department, eliminating any reference to the school district.  This rebranding
22 | intentionally disregarded both the statutory authority and mission statement for the
23 | Department.

24 | 33.     The Department's officers enthusiastically adopted and endorsed the aggressive
25 | policing practices created by Defendants Porter, Robeson, Breck and Does 46 through 50,
26 | whose union at one point sold t-shirts which said, "U RAISE 'EM WE CAGE 'EM."

27 | 34.     During the relevant time Defendant Breck and Does 46 through 50 disregarded
28 | the Twin Rivers Police Department's primary purpose of protecting the school district's

Complaint for Violation of Civil Rights; Jury Trial Demanded                                    7

1 │ students and property and sought to be viewed as a law enforcement agency on an equal
2 │ footing with, and having similar mission to, that of the Sacramento Sheriff's Department and
3 │ city Police Departments within the county.

4 │     35.    To advance this agenda Defendants Porter, Robeson, Breck and Does 46
5 │ through 50 imposed incentives and quotas for arrests, for citations and impounding vehicles.

6 │     36.    Fees from citations and impounding vehicles were used to attempt to
7 │ supplement the Twin Rivers Police Department's finances to obtain the tools and trappings of
8 │ a real police department.

9 │     37.    September 17, 2010, was a Friday. Although the school year had started for the
10 │ Twin Rivers Unified School District, there were no classes in session for the district that day
11 │ because the teachers had non-class duties that day.

12 │     38.    Shortly after 2:00 p.m. Plaintiffs Austin, Andres, Jovon and Demonte were in
13 │ and about a Ford Focus which was lawfully parked, facing northbound, in front of the
14 │ Longdale Drive home. The car was properly registered and there were no obvious mechanical
15 │ issues.

16 │     39.    At approximately 2:07 p.m. Chernyy drove by the Longdale Drive home
17 │ travelling southbound in a marked Twin Rivers Police Department patrol car. The Ford Focus
18 │ had been there for at least ten minutes prior to Chernyy driving by the residence.

19 │     40.    Chernyy made a U-turn and pulled up behind the Ford because he said he "felt"
20 │ the plaintiffs in the car "looking at him" and saw one of the four "slouched down" in the car.

21 │     41.    Chernyy did not activate either his red light or siren.

22 │     42.    Chernyy had neither seen nor had received any report of any criminal conduct
23 │ related to the Ford Focus or its occupants.

24 │     43.    Jovon, who was out of the car at that point, approached Chernyy to ask what
25 │ was up.

26 │     44.    Chernyy, rather than answer Jovon, told Jovon to turn around and put his hands
27 │ behind his back as if he was going to be handcuffed.

28 │     45.    Jovon took a step back and asked what he had done.

1          46.    Rather than answering these questions, Chernyy instead drew his baton.

2          47.    Jovon and Austin expressed their disbelief that they were now being threatened

3 with a baton when they had not done anything other than ask Chernyy what was going on.

4          48.    Chernyy then drew his firearm and pointed it alternately at Jovon's and

5 Austin's heads. He then ordered them to get on the ground face first, but both Jovon and

6 Austin were so concerned by the way Chernyy's gun was shaking in his hand that they simply

7 froze rather than make any movement which could have been misinterpreted by Chernyy.

8          49.    Chernyy called for "Code 3 cover" which brought, with lights and sirens, other

9 units from Twin Rivers Police Department, Sacramento Police Department and the

10 Sacramento Sheriff's Department. The officers emerged from their vehicles with weapons

11 drawn, including hand guns, shot guns and assault rifles. There was also at least one police

12 canine present and at least two law enforcement helicopters responded.

13          50.    In addition to Jovon and Austin being detained at gun point, multiple officers

14 pointed their guns at Andres and Demonte.

15          51.    Andrew had been inside his home taking a nap prior to the commotion outside.

16 When he looked outside to see what was happening, he almost immediately called his mother

17 at work with whom he stayed on the phone almost until the point he was arrested. At his

18 mother's behest, he briefly stepped out of the front door with his grandmother behind him to

19 get a better view of what was happening, but he quickly pushed her back inside the home

20 when he saw all of the guns being pointed at the other plaintiffs and saw a snarling police dog

21 close to where Andres was being detained.

22          52.    After Austin, Jovon, Demonte and Andres had been taken into custody, a

23 female officer told Andrew through the screened, front door that the dog wasn't going to

24 attack him, that he wasn't going to be arrested, but he and the others needed to come out of the

25 house. Andrew then went outside along with his younger sister, his grandmother and his

26 "church" mother.

27          53.    They were all detained at gun point, and Andrew was also arrested along with

28 the others.

Complaint for Violation of Civil Rights; Jury Trial Demanded         9

1         54.     Andrew, Demonte, Jovon, Andres and Austin were then transported to the Twin
2   Rivers Police Department station in North Highlands.

3         55.     All five plaintiffs were placed in a large room which they called the "pre-
4   booking room." There was an area for the officers to write their reports, as well as a bench
5   which permitted seated suspects to be handcuffed to it. Unlike the booking area at the
6   Sacramento County Main Jail, including the report writing stations, there were no video
7   cameras inside the Twin Rivers Police Department's pre-booking room. All five plaintiffs
8   were handcuffed with their hands behind their backs. Andrew, Demonte, Andres and Austin
9   were seated on the bench anchored to the cement floor to which their handcuffs were attached
10  behind them. The bench was away from the walls. In addition to the plaintiffs there were
11  between six and ten Twin Rivers police officers, including Chernyy, Kelly and Ruiz, in the
12  pre-booking room. Several of the officers were looking at the Penal Code and/or cheat sheets
13  and discussing what crimes they could come up with to charge the defendants. The charges
14  they came up with included 1) inciting a riot; 2) lynching; 3) threatening a public official; 4)
15  conspiracy; 5) resisting arrest; 6) assaulting an officer.

16        56.     Defendant Smith entered the room in an obviously agitated state. Smith started
17  yelling at all of the defendants to "shut up" and further yelled: "This ain't no fuckin' Chuck-e-
18  Cheese!" These events would later be remembered by the Twin Rivers Police Department as
19  the "Chuck-e-Cheese thing" and the "Chuck-e-Cheese incident."

20        57.     Without warning Smith then approached Andrew from the front and choked
21  him around the neck with both of his hands while Andrew remained seated and handcuffed.
22  Andrew did not pass out, but was unable to yell out for help.

23        58.     While defendant Smith was choking Andrew, neither Chernyy, Kelly, Ruiz nor
24  any of the other officers present, Does 31-40, did anything to protect Andrew from Smith's
25  attack. They did not attempt to restrain Smith, nor did they tell him to stop.

26        59.     Defendant Smith then, with no further explanation but continuing to berate the
27  five handcuffed plaintiffs, released his grip on Andrew, skipped Jovon, and stepped behind the
28  handcuffed Demonte. He put Demonte's neck in the crook of his right arm and either

1  ineffectively attempted a carotid hold or simply choked Demonte as well. While choking him,
2  Smith lifted Demonte as far up off the bench as was possible without pulling Demonte's arms
3  out of their sockets. Demonte felt his airway cut off, but he did not lose consciousness. While
4  Defendant Smith was choking Demonte, neither Chernyy, Kelly, Ruiz nor any of the other
5  officers, Does 31through 40, did anything to protect Demonte from Smith's attack. They did
6  not attempt to restrain Smith, nor did they tell him to stop.

7  60.    Defendant Smith then, apparently playing his own sadistic version of the
8  children's game "Duck-Duck-Goose," skipped Andres and moved on to Austin. Austin
9  suffers from some significant neurological conditions and was physically traumatized on the
10  verge of a seizure. This didn't keep Smith from choking Austin, but apparently Austin's
11  already shaking body irritated Smith further, so he stopped choking him, took a step back and
12  then drew his Taser, which he targeted on Austin's chest, telling him he'd better "stop
13  shaking." While defendant Smith was choking and targeting Austin with his Taser, neither
14  Chernyy, Kelly, Ruiz nor any of the other officers, Does 31 through 40, did anything to protect
15  Austin from Smith's attack. They did not attempt to restrain Smith, nor did they tell him to
16  stop.

17  61.    Smith then left the room without any further explanation.

18  62.    One of the officers used a cell phone to make an audio recording of what
19  became known as the "Chuck-e-Cheese" thing and the "Chuck-e-Cheese" incident.

20  63.    Neither Chernyy, Ruiz, Kelly, nor Does 31 through 40 summoned any medical
21  attention for any of Smith's victims.

22  64.    These five plaintiffs were then transported to Sacramento County Main Jail and
23  Austin, Demonte, Andres and Jovon were booked on a slew of felony charges which resulted
24  in their being held in custody for five days on a six figure bail amount that their families were
25  unable to raise. Andrew was only booked on a single misdemeanor count and released the
26  next day.

27  65.    The District Attorney's office refused to file any criminal charges against any
28  of these five plaintiffs.

Complaint for Violation of Civil Rights; Jury Trial Demanded                          11

66.     Unfortunately, these five plaintiffs are still saddled by the Department of Justice Records which reflect their arrests on what on the face seem to be serious felonies as a result of the Twin Rivers Police Departments misadventure on September 17, 2010. These computer entries continue to cause great difficulties for plaintiffs in both employment pursuits and in seeking further education.

67.     Smith was not disciplined, nor did he apparently modify his abhorrent behavior after this incident. On May 30, 2011 he assaulted another in-custody prisoner, once again choking him and continued his abuse at the Sacramento County Main Jail where he had brought the prisoner. At the jail he kicked that prisoner in the head, which was clearly evidenced and apparently, unfortunately for Smith, the Sacramento County Sheriff's Deputies at the jail were either appropriately disgusted or, at the least, unwilling to put themselves in a position where they could be blamed for Smith's actions, and his conduct was reported.

68.     Plaintiffs are informed and believe that no investigation into Smith's criminal attacks was initiated until 2012 and after Breck had left as Chief of Police. Plaintiffs believe that Defendants Breck, Porter, Robeson and Does 41-46 had constructive or actual knowledge of Smith's attacks on Andrew, Demonte and Austin since 2010 yet refused to act on that information, allowing Smith to continue his illegal conduct as well as sending the message that unprovoked attacks on citizens who had been arrested by the Twin Rivers Police Department was acceptable or praiseworthy conduct.

69.     The Sacramento District Attorney's Office filed criminal charges against defendant Branche Smith on June 21, 2012, in Sacramento Superior Court Case #12M02245. The Complaint in that case seeks to hold him criminally responsible for his assaults on Andrew, Demonte and Austin (as well as the victim of the May 30, 2011 incident). The criminal case is still pending.

70.     As a result of the actions alleged herein, plaintiffs Demonte, Andrew and Austin suffered a violation of their constitutional rights, physical injury and wrongful detention and arrest, pain and suffering, emotional distress as a consequence of their civil rights being violated and lost economic and educational opportunities. Jovon and Andres

Complaint for Violation of Civil Rights; Jury Trial Demanded                              12

1  suffered a violation of their constitutional rights, wrongful detention and arrest, emotional
2  distress as a consequence of their civil rights being violated and lost economic and educational
3  opportunities.  Plaintiff Wendy Segarra suffered a violation of her constitutional rights and a
4  monetary loss and the loss of the use of her car as the result of the improper impoundment of
5  the Ford Focus.

6      71.    The car which the four plaintiffs had been sitting in, which belonged to plaintiff
7  Wendy Segarra, was towed and impounded pursuant to the practices and policies of the Twin
8  Rivers Police Department, Twin Rivers Unified School District, Defendant Breck and Does
9  46-50.

10  **CLAIMS FOR RELIEF**

11
12  **FIRST CLAIM FOR RELIEF**
   **Unreasonable Seizure/Unlawful Detention**
13  **(Violation of the Fourth Amendment to the U.S. Constitution:**
   **Actionable under 42 U.S.C. §1983)**
14  *(Brought by All Plaintiffs Against Defendants Chernyy, Ruiz and Does 1 – 10)*

15      72.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 71 as
16  though fully set forth herein.

17      73.    The aforementioned acts and/or omissions of the defendants as alleged herein,
18  including but not limited to the detention of plaintiffs without articulation of a reasonable
19  suspicion constituted an unlawful detention, and violated plaintiffs' rights as protected by the
20  Fourth through the Fourteenth Amendment to the United States Constitution.

21      74.    As a direct and proximate result of the aforementioned acts, plaintiffs suffered
22  damages as alleged herein.

23      75.    The aforementioned acts and/or omissions of the individually named defendants
24  were malicious, reckless and/or accomplished with a conscious disregard of plaintiffs' rights
25  thereby entitling plaintiffs to an award of exemplary and punitive damages according to proof.

26  **SECOND CLAIM FOR RELIEF**
   **Unreasonable Seizure/Wrongful Arrest**
27  **(Violation of the Fourth Amendment to the U.S. Constitution:**
   **Actionable under 42 U.S.C. §1983)**
28  *(Brought by All Plaintiffs Against Defendants Chernyy, Ruiz and Does 1 – 10)*

1    76.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 75, as
2    though fully set forth herein.

3    77.    The aforementioned acts and/or omissions of the defendants as alleged herein,
4    including but not limited to the arrests of plaintiffs without probable cause constituted
5    wrongful arrests and violated plaintiffs' rights as protected by the Fourth through the
6    Fourteenth Amendment to the United States Constitution.

7    78.    As a direct and proximate result of the aforementioned acts, plaintiffs suffered
8    damages as alleged herein.

9    79.    The aforementioned acts and/or omissions of the individually named defendants
10   were malicious, reckless and/or accomplished with a conscious disregard of plaintiffs' rights
11   thereby entitling plaintiffs to an award of exemplary and punitive damages according to proof.

12                              **THIRD CLAIM FOR RELIEF**
13                        **Unreasonable Seizure/Excessive Force**
                   **(Violation of the Fourth Amendment to the U.S. Constitution:**
14                          **Actionable under 42 U.S.C. §1983)**
                   *(Brought by All Plaintiffs Against Defendants Chernyy, Ruiz, Kelly and Does 1 – 30)*
15
16   80.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 79, as
     though fully set forth herein.
17
18   81.    The aforementioned acts and/or omissions of the Defendants as alleged herein,
19   including but not limited to pointing guns at plaintiffs' heads at the Longdale Drive residence
     constituted unreasonable seizures of plaintiffs and excessive force and violated plaintiffs'
20   rights as protected by the Fourth through the Fourteenth Amendment to the United States
21   Constitution.
22
23   82.    As a direct and proximate result of the aforementioned acts, plaintiffs suffered
     damages as alleged herein.
24
25   83.    The aforementioned acts and/or omissions of the individually named defendants
26   were malicious, reckless and/or accomplished with a conscious disregard of plaintiffs' rights
     thereby entitling plaintiffs to an award of exemplary and punitive damages according to proof.
27   //
28   //

1  //

2  //

3  **FOURTH CLAIM FOR RELIEF**

4  **Unreasonable Seizure/Excessive Force**
**(Violation of the Fourth Amendment to the U.S. Constitution:**

5  **Actionable under 42 U.S.C. §1983)**
*(Brought by Plaintiffs Andrew Latshaw, Demonte Kelly and Austin Westall Against Defendant*

6  *Branche Smith)*

7       84.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 83, as

8  though fully set forth herein.

9       85.    The aforementioned acts and/or omissions of the defendants as alleged herein,

10  including but not limited to choking Andrew Latshaw, then Demonte Kelly and then Austin

11  Westall while those plaintiffs were handcuffed, constituted unreasonable seizures of plaintiffs

12  and excessive force and violated plaintiffs' rights as protected by the Fourth through the

13  Fourteenth Amendment to the United States Constitution.

14       86.    As a direct and proximate result of the aforementioned acts, plaintiffs suffered

15  damages as alleged herein.

16       87.    The aforementioned acts and/or omissions of the individually named defendants

17  were malicious, reckless and/or accomplished with a conscious disregard of plaintiffs' rights

18  thereby entitling plaintiffs to an award of exemplary and punitive damages according to proof.

19  **FIFTH CLAIM FOR RELIEF**

20  **Unreasonable Seizure/Excessive Force**
**(Violation of the Fourth Amendment to the U.S. Constitution:**

21  **Actionable under 42 U.S.C. §1983)**
*(Brought by Plaintiffs Andrew Latshaw, Demonte Kelly and Austin Westall Against*

22  *Defendants Chernyy, Ruiz, Kelly and Does 31 – 40)*

23       88.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 87, as

24  though fully set forth herein.

25       89.    The aforementioned acts and/or omissions of the defendants as alleged herein,

26  including but not limited to failing to intervene or to protect Andrew, Demonte and Austin,

27  from Officer Branche Smith's attack constituted unreasonable seizures of plaintiffs and

28  excessive force and violated plaintiffs' rights as protected by the Fourth through the

1  Fourteenth Amendment to the United States Constitution.

2      90.     As a direct and proximate result of the aforementioned acts, plaintiffs suffered

3  damages as alleged herein.

4      91.     The aforementioned acts and/or omissions of the individually named defendants

5  were malicious, reckless and/or accomplished with a conscious disregard of plaintiffs' rights

6  thereby entitling plaintiffs to an award of exemplary and punitive damages according to proof.

7  **SIXTH CLAIM FOR RELIEF**

**Individual Supervisory Liability –**
8
**Operation of a School Police District with General Police Powers**
9  **(Violation of the Fourth Amendment to the U.S. Constitution:**
**Actionable under 42 U.S.C. §1983)**
10  *(Brought by All Plaintiffs Against Defendants Porter,*
*Breck and Does 46 – 50)*
11

12      92.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 91, as

13  though fully set forth herein.

14      93.     The aforementioned acts and/or omissions of the defendants as alleged herein,

15  including but not limited to the unlawful detention of plaintiffs, the wrongful arrest of

16  plaintiffs, and pointing guns at plaintiffs' heads at the Longdale Drive residence, and Branche

17  Smith's choking of plaintiffs Andrew Latshaw, Demonte Kelly and Austin Westall, which

18  violated plaintiffs' rights as protected by the Fourth through the Fourteenth Amendment to the

19  United States Constitution, occurred as a result of Defendants Frank Porter, Christopher Breck

20  and Does 46 – 50's operation, supervision and/or direction of a school police district vested

21  with general police powers contrary to California Education Code Section 38000(a).

22      94.     Defendants Frank Porter, Christopher Breck and Does 46 – 50 knew or

23  reasonably should have known that operating, supervising and/or directing a school police

24  district vested with general police powers would cause their subordinates to deprive plaintiffs

25  of their constitutional rights.

26      95.     As a direct and proximate result of the aforementioned acts, plaintiffs suffered

27  damages as alleged herein.

28      96.     The aforementioned acts and/or omissions of the individually named defendants

1  were malicious, reckless and/or accomplished with a conscious disregard of plaintiffs' rights

2  thereby entitling plaintiffs to an award of exemplary and punitive damages according to proof.

3  **SEVENTH CLAIM FOR RELIEF**

4  **Individual Supervisory Liability - Towing Policies and Quotas**
   **(Violation of the Fourth Amendment to the U.S. Constitution:**

5  **Actionable under 42 U.S.C. §1983)**
   *(Brought by All Plaintiffs Against Defendants Lor, Robeson, Porter, Breck and Does 46 – 50)*

6  97.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 96, as

7  though fully set forth herein.

8  98.    The aforementioned acts and/or omissions of the defendants as alleged herein,

9  including but not limited to the unlawful detention of plaintiffs, the wrongful arrest of

10  plaintiffs, and pointing guns at plaintiffs' heads at the Longdale Drive residence, which

11  violated plaintiffs' rights as protected by the Fourth through the Fourteenth Amendment to the

12  United States Constitution, occurred as a result of Defendants Chue Lor, Ziggy Robeson,

13  Frank Porter, Christopher Breck and Does 46 – 50's implementing policies of towing and

14  impounding vehicles without proper justification and having quotas for citations and arrests.

15  99.    Defendants Chue Lor, Ziggy Robeson, Frank Porter, Christopher Breck and

16  Does 46 – 50 knew or reasonably should have known that implementing policies of towing

17  and impounding vehicles without proper justification and having quotas for citations and

18  arrests would cause their subordinates to deprive plaintiffs of their constitutional rights.

19  100.    As a direct and proximate result of the aforementioned acts, plaintiffs suffered

20  damages as alleged herein.

21  101.    The aforementioned acts and/or omissions of the individually named defendants

22  were malicious, reckless and/or accomplished with a conscious disregard of plaintiffs' rights

23  thereby entitling plaintiffs to an award of exemplary and punitive damages according to proof.

24  **EIGHTH CLAIM FOR RELIEF**

25  **Individual Supervisory Liability – Failure to Supervise**
   **(Violation of the Fourth Amendment to the U.S. Constitution:**

26  **Actionable under 42 U.S.C. §1983)**

27  *(Brought by All Plaintiffs Against Defendants Lor, Robeson, Porter, Breck and Does 41 – 45)*

28  102.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 101, as

1 | though fully set forth herein.

2 | 103. The aforementioned acts and/or omissions of the defendants as alleged herein,
3 | including but not limited to the unlawful detention of plaintiffs, the wrongful arrest of
4 | plaintiffs, pointing guns at plaintiffs' heads at the Longdale Drive residence, and Branche
5 | Smith's choking of plaintiffs Andrew Latshaw, Demonte Kelly and Austin Westall, which
6 | violated plaintiffs' rights as protected by the Fourth through the Fourteenth Amendment to the
7 | United States Constitution, occurred as a result of Defendants Chue Lor, Ziggy Robeson,
8 | Frank Porter, Christopher Breck and Does 46 – 50's failure to control subordinates with a
9 | history of misbehavior and failure to correct unconstitutional practices or conditions.

10 | 104. Defendants Chue Lor, Ziggy Robeson, Frank Porter, Christopher Breck and
11 | Does 46 – 50 knew or reasonably should have known that their failure to control subordinates
12 | with a history of misbehavior and their failure to correct unconstitutional practices or
13 | conditions would cause their subordinates to deprive plaintiffs of their constitutional rights.

14 | 105. As a direct and proximate result of the aforementioned acts, plaintiffs suffered
15 | damages as alleged herein.

16 | 106. The aforementioned acts and/or omissions of the individually named defendants
17 | were malicious, reckless and/or accomplished with a conscious disregard of plaintiffs' rights
18 | thereby entitling plaintiffs to an award of exemplary and punitive damages according to proof.

19 | **NINTH CLAIM FOR RELIEF**
20 | **Individual Supervisory Liability – Failure to Train**
**(Violation of the Fourth Amendment to the U.S. Constitution:**
21 | **Actionable under 42 U.S.C. §1983)**
*(Brought by All Plaintiffs Against Defendants Lor, Robeson, Porter, Breck and Does 41 – 45)*
22 |
107. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 106, as
23 | though fully set forth herein.
24 |
108. The aforementioned acts and/or omissions of the defendants as alleged herein,
25 | including but not limited to the unlawful detention of plaintiffs and the wrongful arrest of
26 | plaintiffs, which violated plaintiffs' rights as protected by the Fourth through the Fourteenth
27 | Amendment to the United States Constitution, occurred as a result of defendants Chue Lor,
28 | Ziggy Robeson, Frank Porter, Christopher Breck and Does 46 – 50's failure to train their

1 subordinates to make lawful detentions and arrests.

2     109.   Defendants Chue Lor, Ziggy Robeson, Frank Porter, Christopher Breck and

3 Does 46 – 50 knew or reasonably should have known that their failure to train their

4 subordinates to make lawful detentions and arrests would cause their subordinates to deprive

5 plaintiffs of their constitutional rights.

6     110.   As a direct and proximate result of the aforementioned acts, plaintiffs suffered

7 damages as alleged herein.

8     111.   The aforementioned acts and/or omissions of the individually named defendants

9 were malicious, reckless and/or accomplished with a conscious disregard of plaintiffs' rights

10 thereby entitling plaintiffs to an award of exemplary and punitive damages according to proof.

11
**TENTH CLAIM FOR RELIEF**
**Individual Supervisory Liability – Failure to Train**
**(Violation of the Fourth Amendment to the U.S. Constitution:**
**Actionable under 42 U.S.C. §1983)**
*(Brought by All Plaintiffs Against Defendants Lor, Robeson, Porter, Breck and Does 41 – 45)*

112. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 111, as though fully set forth herein.

113. The aforementioned acts and/or omissions of the defendants as alleged herein, including but not limited to Branche Smith's choking of plaintiffs Andrew Latshaw, Demonte Kelly and Austin Westall, which violated plaintiffs' rights as protected by the Fourth through the Fourteenth Amendment to the United States Constitution, occurred as a result of Defendants Chue Lor, Ziggy Robeson, Frank Porter, Christopher Breck and Does 46 – 50's failure to train their subordinates in intervening to protect detainees in their custody.

114. Defendants Chue Lor, Ziggy Robeson, Frank Porter, Christopher Breck and Does 46 – 50 knew or reasonably should have known that their failure to train their subordinates to protect detainees in their custody would cause their subordinates to deprive plaintiffs of their constitutional rights.

115. As a direct and proximate result of the aforementioned acts, plaintiffs suffered damages as alleged herein.

116. The aforementioned acts and/or omissions of the individually named defendants

1   were malicious, reckless and/or accomplished with a conscious disregard of plaintiffs' rights
2   thereby entitling plaintiffs to an award of exemplary and punitive damages according to proof.

3   **ELEVENTH CLAIM FOR RELIEF**
4   **Individual Supervisory Liability – Failure to Supervise**
    **(Violation of the Fourth Amendment to the U.S. Constitution:**
5   **Actionable under 42 U.S.C. §1983)**
    *(Brought by All Plaintiffs Against Does 41 – 45)*
6
    117.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 116, as
7   though fully set forth herein.
8
    118.    The aforementioned acts and/or omissions of the defendants as alleged herein,
9   including but not limited to Branche Smith's choking of Plaintiffs Andrew Latshaw, Demonte
10  Kelly and Austin Westall, which violated plaintiffs' rights as protected by the Fourth through
11  the Fourteenth Amendment to the United States Constitution, occurred as a result of
12  Defendants Does 41 – 45's failure to supervise their subordinates.
13
    119.    Defendants 41 – 45 knew or reasonably should have known that their
14  subordinates were engaging in these acts, that their conduct would deprive plaintiffs of these
15  rights, and failed to act to prevent such the subordinates from engaging in such conduct.
16
    120.    As a direct and proximate result of the aforementioned acts, plaintiffs suffered
17  damages as alleged herein.
18
    121.    The aforementioned acts and/or omissions of the individually named defendants
19  were malicious, reckless and/or accomplished with a conscious disregard of plaintiffs' rights
20  thereby entitling plaintiffs to an award of exemplary and punitive damages according to proof.
21
    **TWELFTH CLAIM FOR RELIEF**
22  **Unlawful Taking of Property**
    **(Violation of the Fifth Amendment to the U.S. Constitution:**
23  **Actionable under 42 U.S.C. Section 1983)**
    *(Brought by Wendy Segarra Against Defendants Lor, Chernyy, Kelly and Does 1 – 10)*
24
    122.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 121, as
25  though fully set forth herein.
26
    123.    The aforementioned acts and/or omissions of the defendants as alleged herein,
27  including but not limited to depriving Plaintiff Wendy Segarra of her personal property,
28

1 || constituted an unlawful deprivation of property and violated plaintiff's rights as protected by

2 || the Fifth through the Fourteenth Amendments of the United States Constitution.

3 || 124.   As a direct and proximate result of the aforementioned acts, plaintiff suffered

4 || damages and the loss of the use of her property as alleged herein.

5 || 125.   The aforementioned acts and/or omissions of the individually named defendants

6 || were malicious, reckless and/or accomplished with a conscious disregard of plaintiff's rights

7 || thereby entitling plaintiff to an award of exemplary and punitive damages according to proof.

8 || **PRAYER FOR RELIEF**

9 || WHEREFORE, Plaintiffs pray for the following relief:

10 || 1.   For a declaratory judgment that plaintiffs Austin Westall, Andrew Latshaw,

11 || Demonte Kelly, Jovon Kelly, and Andres Gutierrez should be accorded relief pursuant to

12 || California Penal Code Section 851.8 et seq.;

13 || 2.   For a declaratory judgment that the officers of the Twin Rivers Police

14 || Department cease from acting under color of law as law enforcement officers with general

15 || police powers; and further that they accurately represent themselves as school district

16 || police officers operating pursuant to California Education Code Section 38000(a);

17 || 3.   For compensatory, general and special damages against each defendant,

18 || jointly and severally, in the amount proven at trial;

19 || 4.   For punitive and exemplary damages against each defendant in an amount

20 || appropriate to punish defendants and deter others from engaging in similar misconduct, as

21 || allowed by law;

22 || 5.   For such other relief, including injunctive and/or declaratory relief, as the

23 || Court may deem proper.

24 || 6.   For costs and reasonable attorneys' fees pursuant to 42 U.S.C. section 1988

25 || and as otherwise authorized by statute or law;

26 || ///

27 || ///

28 || ///

1  Dated: September 12, 2012                                    Respectfully submitted,

2
                                                      /s/ Stewart Katz
3                                                     STEWART KATZ,
4                                                     Attorney for Plaintiffs

5                          **DEMAND FOR TRIAL BY JURY**

6

7       Plaintiffs hereby demand trial by jury.

8

9  Dated:  September 12, 2012

10                                                    /s/ Stewart Katz
                                                      STEWART KATZ,
11                                                    Attorney for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28